J-S65028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMIN H.H. GIBBS | : | |
| | : | |
| Appellant | : | No. 1711 EDA 2016 |

Appeal from the Judgment of Sentence April 8, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0004779-2013,
CP-51-CR-0004781-2013

BEFORE:  OLSON, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                          **FILED MARCH 28, 2018**

Amin H.H. Gibbs appeals *nunc pro tunc* from the judgment of sentence imposed April 8, 2015, in the Philadelphia County Court of Common Pleas. The trial court sentenced Gibbs to an aggregate term of 17½ to 35 years' imprisonment following his jury conviction of charges of aggravated assault, persons not to possess firearms (two counts), and carrying a firearm on a public street in Philadelphia[1] in two consolidated cases.  Contemporaneous with this appeal, Gibbs's counsel has filed a petition to withdraw from representation and an **Anders** brief.  **See Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981).  The **Anders** brief addresses four issues:  (1) the sufficiency of the evidence; (2) the weight of the evidence; (3) the court's denial of a motion to suppress; and

---

[1] 18 Pa.C.S. §§ 2702(a), 6105, and 6108, respectively.

(4) the discretionary aspects of sentencing. Moreover, Gibbs submitted a *pro se* filing raising additional arguments on appeal. For the reasons below, we affirm the judgment of sentence and grant counsel's petition to withdraw.

The pertinent facts and procedural history underlying this appeal are as follows. On October 24, 2012, Gibbs had an argument with Devoun Handy outside West Park Homes, a housing project located at 300 Busti Street in West Philadelphia. During the altercation, Gibbs pulled out two firearms and began shooting at Handy. Handy fled, and escaped unharmed.

In the early morning hours of November 17, 2012, another shooting incident occurred on Holden Street outside West Park Homes, where Handy was attending a party. While Handy was standing outside with several others, a Chevrolet Impala approached them and an individual in the passenger seat started firing a gun in their direction. One of the people in the group, Zykia Sanders, was fatally struck by a bullet. In statements to the police, witnesses identified Gibbs as the shooter in both incidents.

On November 23, 2012, police went to arrest Gibbs at the home of his girlfriend, Rasheedah Malone. When Malone answered the door, the arresting officer heard Gibbs run upstairs. The officer ordered Gibbs to return downstairs. Gibbs complied and was taken into custody. The police subsequently secured and executed a search warrant at the residence. They recovered from the second-floor front bedroom a .22-caliber revolver, a sawed-off shotgun, a black iPhone in a blue rubber case, and mail addressed to Gibbs.

The Commonwealth charged Gibbs with aggravated assault, persons not to possess firearms, carrying a firearm on a public street in Philadelphia, and related offenses in connection with the October 24, 2012, shooting (Docket No. 4781-2013); murder and related offenses in connection with the November 17, 2012, shooting (Docket No. 4782-2013); and persons not to possess firearms and prohibited offensive weapons with respect to the firearms recovered during the November 23, 2012, search of Malone's house (Docket No. 4779-2013). On October 20, 2014, while represented by counsel, Gibbs filed a *pro se* motion to suppress. The trial court held a hearing and denied the suppression motion on December 2, 2014.[2] Following a consolidated trial, a jury convicted Gibbs at Docket No. 4781-2013 of aggravated assault, persons not to possess firearms, and carrying a firearm on a public street in Philadelphia. At Docket No. 4779-2013, the jury convicted Gibbs of the separate charge of persons not to possess firearms. Gibbs was acquitted of all other charges.

On April 8, 2015, the trial court sentenced Gibbs to an aggregate term of 17½ to 35 years' imprisonment. Gibbs filed a timely post-sentence motion challenging the weight of the evidence. The motion was denied by operation

---

[2] There is no indication in the record that counsel ever filed a written motion to suppress. At the commencement of the suppression hearing, the court asked defense counsel to state the basis for the suppression motion, and counsel raised two issues: (1) lack of probable cause supporting the search warrant for Malone's residence, and (2) the lawfulness of Gibbs' arrest. **See** N.T., 12/2/2014, at 3-4.

of law on August 11, 2015. On February 5, 2016, Gibbs filed a timely petition pursuant to the Post Conviction Relief Act[3] ("PCRA"), requesting reinstatement of his direct appeal rights *nunc pro tunc*. The PCRA court reinstated Gibbs' direct appeal rights on May 6, 2016. This timely appeal followed.[4]

When counsel files a petition to withdraw and accompanying ***Anders*** brief, we must first examine the request to withdraw before addressing any of the substantive issues raised on appeal. ***Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Here, our review of the record reveals counsel has complied with the requirements for withdrawal outlined in ***Anders***, ***supra***, and its progeny. Notably, counsel completed the following: (1) he filed a petition for leave to withdraw, in which he states he has made a conscientious examination of the record and concludes the appeal is wholly frivolous; (2) he filed an ***Anders*** brief pursuant to the dictates of ***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009); (3) he furnished a copy of the ***Anders*** brief to Gibbs; and (4) he advised Gibbs of his right to retain new counsel or proceed *pro se*. ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*).

Therefore, we proceed to an examination of the issues addressed in the ***Anders*** brief. Moreover, because Gibbs filed a *pro se* response to counsel's

_____

[3] 42 Pa.C.S. §§ 9541-9546.

[4] On June 14, 2016, the trial court ordered Gibbs to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After receiving an extension of time, Gibbs' counsel filed a Rule 1925(c)(4) statement of intent to file an ***Anders*** brief in lieu of a concise statement.

- 4 -

request to withdraw, in which he raised several additional claims he believes are meritorious, we must also determine whether those claims are frivolous. **See Commonwealth v. Bennett**, 124 A.3d 327, 333 (Pa. Super. 2015) ("[W]hen an appellant, either acting *pro se* or through private counsel, files a response to the **Anders** brief, our independent review is limited to those issues raised in the **Anders** brief. We then review the subsequent *pro se* or counseled filing as we do any advocate's brief.").[5]

The first issue identified in the **Anders** brief challenges the sufficiency of the evidence supporting Gibbs' convictions. **See Anders** Brief at 10.

Our standard of review for a challenge to the sufficiency of the evidence is well-settled:

> Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary. When reviewing the sufficiency of the evidence, this Court is tasked with determining whether the evidence at trial, and all reasonable inferences derived therefrom, are sufficient to establish all elements of the offense beyond a reasonable doubt when viewed in the light most favorable to the Commonwealth [.] The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented.

**Commonwealth v. Walls**, 144 A.3d 926, 931 (Pa. Super. 2016), *appeal denied*, 167 A.3d 698 (Pa. 2017) (internal citations and quotation marks

---

[5] To the extent Gibbs' *pro se* issues are related to the claims addressed in the **Anders** brief, we will review them together.

J-S65028-17

omitted).

The Pennsylvania Crimes Code defines aggravated assault in relevant part as follows:

> A person is guilty of aggravated assault if he:
>
> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
>
>                 \*      \*      \*
>
> (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S. § 2702(a)(1), (4). Further, the Crimes Code sets forth the following definitions:

> "Bodily injury." Impairment of physical condition or substantial pain.
>
> "Deadly weapon." Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.
>
> "Serious bodily injury." Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

18 Pa.C.S. § 2301. "For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." *Commonwealth v. Gruff*, 822 A.2d 773, 776 (Pa. Super. 2003),

- 6 -

*appeal denied*, 863 A.2d 1143 (Pa. 2004). "[I]n instances where the defendant has both drawn and fired (or drawn and misfired) a gun, we have consistently held that an aggravated assault occurred." **Commonwealth v. Matthews**, 870 A.2d 924, 929 (Pa. Super. 2005) (*en banc*).

The Crimes Code defines the offense of carrying firearms on public streets or public property in Philadelphia as follows:

> No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:
>
> (1)  such person is licensed to carry a firearm; or
>
> (2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S. § 6108.

The offense of persons not to possess firearms is defined as follows:

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1).  When a prohibited item is not discovered on a defendant's person, or in his actual possession, the Commonwealth may prove the defendant had constructive possession of the item:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement.  Constructive possession is an inference arising from a set of facts that possession of the

contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012), *appeal denied*, [] 63 A.3d 1243 ([Pa.] 2013) (internal quotation marks and citation omitted). "Additionally, it is possible for two people to have joint constructive possession of an item of contraband." *Commonwealth v. Sanes*, 955 A.2d 369, 373 (Pa. Super. 2008), *appeal denied*, 601 Pa. 696, 972 A.2d 521 (2009).

*Commonwealth v. Hopkins*, 67 A.3d 817, 820-21 (Pa. Super. 2013), *appeal denied*, 78 A.3d 1090 (Pa. 2013). "An intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." *Commonwealth v. Harvard*, 64 A.3d 690, 699 (Pa. Super. 2013), *appeal denied*, 77 A.3d 636 (Pa. 2013) (citation omitted).

Here, at trial, the Commonwealth produced the following evidence to support Gibbs' conviction for aggravated assault. Devoun Handy gave a statement to police in which he described the October 24, 2012, shooting. Handy stated he and Gibbs "had words at 300 Busti Street. [Gibbs] came back out of the building with two handguns and he told me to stop playing with him. I started backing up and he started shooting at me. I ran and he ran off." N.T., 12/8/2014, at 52. Anthony Wells also told the police he saw Gibbs shoot at Handy on October 24, 2012. *See* N.T., 12/5/2014, at 17.

Following the November 17, 2012, shooting, several witnesses gave statements to the police indicating they were aware Gibbs had attempted to shoot Handy three weeks earlier at 300 Busti Street. *See* N.T., 12/4/2014, at 152-152, 243; N.T., 12/5/2014, at 41-42.

Other evidence corroborated the witnesses' statements. At around 5:10 p.m. on October 24, 2012, police received multiple reports of a shooting. The FBI's analysis of cell phone records placed Gibbs near the location of the shooting on that date. Further, Gibbs sent several text messages shortly after the shooting indicating he was the perpetrator and he was hiding from the police. For instance, Gibbs sent the following text messages to a contact listed as "Nye-Nye" the night of the shooting: "My name in the air. Heavy. Like on the tip. 5-0. No."; "He been asking for it. He begged for that. He lucky my shit locked up on me."; "Last thing do the cops know my handle?" N.T., 12/5/2014, at 99-104. Nye-Nye also sent Gibbs a text message stating: "UK . . . anything I hear and who is snitching, I got your back, cuz. Just be safe out there, please, and I love you." *Id.* at 104-105. On October 28, 2012, Gibbs sent the following text message: "They talking still, Nye-Nye?" Nye-Nye responded: "Nah, they not talking. I don't think the cops looks for you either. And Winky says call her." *Id.* at 105-106.

Based upon the witnesses' statements and the text messages, the jury could conclude that Gibbs used a firearm in an attempt to cause serious bodily injury to Devoun Handy during the October 24, 2012, incident. Therefore, we

find Gibbs' aggravated assault conviction was supported by sufficient evidence.

Moreover, Gibbs stipulated to the fact that his prior record disqualified him from possessing a firearm. Accordingly, the Commonwealth presented sufficient evidence to support his convictions for persons not to possess a firearm and carrying a firearm on a public street in Philadelphia, in connection with the October 24, 2012, incident.

With respect to the conviction of persons not to possess firearms arising from Gibbs' November 23, 2012, arrest and the search of Rasheedah Malone's house, we note the arresting officer testified that he heard Gibbs run upstairs to the second-floor front bedroom when Malone answered the door. Police recovered a .22-caliber revolver from a shelf above the closet in that bedroom, where Malone stated Gibbs kept the gun. Anthony Wells had previously told police that Gibbs used a .22-caliber firearm to shoot at Handy on October 24, 2012. Additionally, the police found mail addressed to Gibbs in the bedroom, which indicated he was an occupant of the room. This evidence was sufficient to prove Gibbs had constructive possession of the revolver, and, consequently, to sustain his conviction for persons not to possess firearms at Docket No. 4779-2013. Accordingly, we agree with counsel's assessment that any challenge to the sufficiency of the evidence supporting Gibbs' convictions is frivolous.

Next, the **Anders** brief presents a claim that the trial court improperly

denied Gibbs' challenge to the weight of the evidence underlying his convictions. *See Anders* Brief at 13.

We review a claim that a verdict was against the weight of the evidence according to the following principles:

> "[A]n allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Sullivan*, [] 820 A.2d 795, 805-06 (Pa. Super. 2003). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Widmer*, [] 744 A.2d 745, 753 (Pa. 2000). "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Sullivan*, 820 A.2d at 806 (citation omitted).

*Commonwealth v. Wright*, 846 A.2d 730, 736-737 (Pa. Super. 2004).

In the present case, Gibbs properly filed a post-sentence motion in which he challenged the weight of the evidence supporting his convictions. *See* Motion for New Trial, filed 4/9/2015, at unnumbered 2. However, the trial court never specifically addressed the weight claim because the motion was denied by operation of law. Moreover, the judge who presided over Gibbs' jury trial is no longer sitting in the Philadelphia County Court of Common Pleas. In such a case, the Pennsylvania Supreme Court has carved an exception to the general rule that "a weight of the evidence claim is primarily addressed to the discretion of the judge who actually presided at trial." *Armbruster v. Horowitz*, 813 A.2d 698, 702 (Pa. 2002). The *Armbruster* Court held:

> [W]here a properly preserved weight of the evidence claim is raised on appeal and the judge who presided at trial failed to rule on the claim and is now permanently unavailable to do so, the claim must be reviewed by the appellate tribunal in the first instance. We are confident in the ability of our appellate courts to apply this exception appropriately, with an eye to the delicate balance that exists between the jury's exclusive role in assessing credibility, and our longstanding recognition of the power in courts to allow justice another opportunity to prevail when a verdict nevertheless shocks the judicial conscience. In this regard, we note that our appellate courts are well-familiar with weight claims. Although appellate review has been confined to an assessment of the trial judge's exercise of discretion, it obviously has been necessary to consider the proper role and contours of the weight of the evidence doctrine, in evaluating that exercise of discretion.

*Id.* at 705. Therefore, we may proceed to an examination of Gibbs' weight of the evidence claim absent a trial court opinion.

The problem herein, however, is that Gibbs has failed to provide any argument to support a finding that the verdicts were against the weight of the evidence in either his post sentence motion or *Anders* brief.[6] *See* Motion for New Trial, filed 4/9/2015, at unnumbered 2 (asserting his convictions "were against the weight of the evidence[, such evidence being] incapable of supporting the aforesaid criminal convictions"); *Anders* Brief at 11-12. Accordingly, absent a specific basis to conclude the jury's verdict was against the weight of the evidence, we conclude this claim is waived, and agree with counsel's determination that the issue on appeal is frivolous.

---

[6] Gibbs did not address the weight claim in his *pro se* response to counsel's *Anders* brief.

The third issue identified in the **Anders** brief challenges the trial court's denial of Gibbs' motion to suppress the evidence recovered during the search of Rasheedah Malone's house. Gibbs contends the search was unlawful due to a typographical error in the number of the search warrant for the house. Gibbs further claims the search warrant for Gibbs' cell phone was based on an affidavit of probable cause containing inaccurate information. Specifically, Gibbs avers the affidavit incorrectly stated that his uncle identified Gibbs' phone number for the police. **See Anders** Brief at 12-13.

In his *pro se* response to the **Anders** brief, Gibbs raises additional related claims that (1) the police arrested Gibbs in Malone's residence without a physical warrant and obtained Malone's signature consenting to the police entry after the fact, while she was in custody; (2) the police lacked probable cause to believe that evidence of firearms violations would be found in Malone's residence; and (3) the search warrant was overbroad because it sought, *inter alia*, "any other items deemed to be of evidentiary value." **See Anders** Brief Opposition, 5/12/2017, at 16-19.

Our standard of review of a trial court's denial of a motion to suppress is as follows:

> When we review the ruling of a suppression court, we must determine whether its factual findings are supported by the record. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense which is uncontradicted on the record as a whole; if there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court

- 13 -

only if the legal conclusions drawn from these facts are erroneous. Moreover, even if the suppression court did err in its legal conclusions, the reviewing court may nevertheless affirm its decision where there are other legitimate grounds for admissibility of the challenged evidence.

*Commonwealth v. Laatsch*, 661 A.2d 1365, 1367 (Pa. 1995).

A search warrant is constitutionally valid if it: (1) describes the place to be searched and the items to be seized with specificity; and (2) is supported by probable cause to believe that the items sought will provide evidence of a crime. *Commonwealth v. Ruey*, 892 A.2d 802, 810 (Pa. 2006).

> In determining whether a search warrant is supported by probable cause, appellate review is confined to the four corners of the affidavit. Probable cause, in turn, is a practical, non-technical concept which requires consideration of the totality of the circumstances. The district judge that is requested to issue a warrant makes a practical, common-sense determination as to whether, given all of the facts and circumstances provided in the affidavit, including the veracity and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a certain locale. The duty of the reviewing court is to simply ensure that the district judge had a substantial basis for concluding that probable cause existed.

*Commonwealth v. Galvin*, 985 A.2d 783, 796 (Pa. 2009). "[T]he Pennsylvania Supreme Court has instructed that search warrants should be read in a common sense fashion and should not be invalidated by hyper-technical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice." *Id.* at 828 (citation omitted).

Instantly, on November 20, 2012, a warrant was issued for Gibbs' arrest for violating his parole in a previous case. At the suppression hearing, the arresting officer testified that he received a call on November 23, 2012, informing him that Gibbs was wanted for a parole violation and could be located at Malone's residence. The officer confirmed the existence of the warrant by checking the NCIC/PCIC criminal databases. *See* N.T., 12/2/2014, at 7, 16, 22-23. Thus, Gibbs' arrest was lawful, regardless of whether the officer physically possessed the arrest warrant when he took Gibbs into custody. *See Commonwealth v. Blakney*, 396 A.2d 5 (Pa. Super. 1978) (stating fact that arrest was made by police officer who had knowledge of arrest warrant, but did not have physical possession of it at time of arrest, would not affect its validity). Moreover, whether Malone consented to the officer's entry into her house has no bearing on the validity of Gibbs' arrest.[7] *See Commonwealth v. Stanley*, 401 A.2d 1166 (Pa. Super. 1979) (stating arrest warrants represent judicial sanction of deprivations of suspects' liberties; possession of warrants was completely self-validating justification for arrests regardless of circumstances under which police reached the location where they served warrants). Therefore, Gibbs' challenge to his arrest is frivolous.

---

[7] Additionally, none of the evidence Gibbs sought to suppress was recovered during the initial entry of the police into the house to arrest him. That evidence was recovered during a search later in the day after the police had secured a search warrant.

With regard to Gibbs' objection to the search warrant, we note that the number on the search warrant (169852) differed by one digit from the number on the attached affidavit of probable cause (169842). At the suppression hearing, the detective who prepared the search warrant testified that the discrepancy was due to a typographical error, and the affidavit pertained to Malone's residence. *See* N.T., 12/2/2014, at 44-45. The search warrant and the affidavit both have the same date and refer to the same address to be searched. The body of the affidavit makes clear it was intended to establish probable cause for a search of Malone's residence following Gibbs' arrest at that location. Therefore, the trial court properly determined the patent typographical error in the affidavit did not require suppression of the evidence recovered from the house. *See Commonwealth v. Leed*, 142 A.3d 20 (Pa. Super. 2016) (stating trial court was entitled to consider totality of circumstances set forth in affidavit of probable cause; obvious typographical error in affidavit did not invalidate search warrant).

We further reject Gibbs' contention that the search was unsupported by probable cause. The search warrant sought the following evidence:

> Handguns, Firearms, Ammunition or other ballistic type evidence; proof of ownership/registration of vehicles; proof of residency/occupation; dark colored hoodie type jacket; and any other items deemed to be of evidentiary value.

Commonwealth's Exhibit C-72. The attached affidavit of probable cause established the following: Zykia Sanders was shot and killed on November 17, 2012, outside 4445 Holden Street, where several people were gathered; a

witness to the incident identified Gibbs as the shooter; Handy told police he was in the crowd and had a problem with Gibbs, who had shot at him in the same area approximately one month earlier; an additional witness told police he had heard people saying Gibbs had shot Sanders, but she was not the intended target; the witness also stated he saw Gibbs use two handguns to shoot at one of the males in the crowd approximately three to four weeks earlier; Gibbs was on parole for a prior murder conviction; police obtained an arrest warrant for Gibbs and arrested him in Malone's residence on November 23, 2012; Malone told police Gibbs had been staying with her since August 2012. Accordingly, the information in the affidavit established probable cause to search Malone's house for evidence related to the murder of Sanders.

Gibbs' specific claim regarding the breadth of the search warrant is waived. We note that Gibbs did assert, in passing, that the search warrant for Malone's residence was overbroad in his *pro se* motion to suppress filed on October 20, 2014. However, this *pro se* filing was a legal nullity because Gibbs was represented by counsel at that time. **See Commonwealth v. Tedford**, 960 A.2d 1, 10 n.4 (Pa. 2008) (stating criminal defendant represented by counsel is not entitled to "hybrid representation"—*i.e.*, he cannot litigate certain issues *pro se* while counsel forwards other claims); **Commonwealth v. Ruiz**, 131 A.3d 54, 56 n.4 (Pa. Super. 2015) (stating that defendant's *pro se* filing in trial court was legal nullity since he was represented by counsel). Counsel did not raise the issue of the warrant's scope either in a written motion

or at the suppression hearing, where counsel litigated two distinct claims. *See supra*, at 3 n.2. Therefore, the court had no opportunity to address this specific argument, and it is waived on appeal. *See* Pa.R.A.P. 302(a) (issues not raised in lower court are waived and cannot be raised for first time on appeal).

With regard to Gibbs' claims concerning the search of his cell phone, we note that during a sidebar conference at trial, defense counsel objected to the validity of the search warrant authorizing a forensic examination of Gibbs' phone. *See* N.T., 12/4/2014, at 11-14. Counsel alleged the supporting affidavit of probable cause inaccurately stated that Gibbs' uncle identified Gibbs' phone number in a statement to the police. *See id.* at 13. Nonetheless, counsel acknowledged that Gibbs' uncle told police his cell phone had Gibbs' phone number stored in it under the nickname "Meen," and the police then obtained Gibbs' phone number through a search of his uncle's phone. *See id.* at 11-12. This issue is arguably waived based upon Gibbs' failure to raise it in his pretrial suppression motion. *See* Pa.R.Crim.P. 581(B) (stating: "Unless the opportunity did not previously exist, or the interests of justice otherwise require, such motion [to suppress] shall be made only after a case has been returned to court and shall be contained in the omnibus pretrial motion set forth in Rule 578. If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived"). Furthermore, the fact that Gibbs' uncle told police the contact name for Gibbs

in his phone, instead of reciting the digits of Gibbs' phone number, is inconsequential. In either case, Gibbs' uncle provided the number to the police. Accordingly, the record supports the trial court's suppression rulings, and we conclude counsel correctly determined any challenge to those rulings is frivolous.

The final issue raised in the **Anders** brief involves a generic challenge to the discretionary aspects of Gibbs' sentence.

A challenge to the discretionary aspects of a sentence is not absolute, but rather, "must be considered a petition for permission to appeal." **Commonwealth v. Best**, 120 A.3d 329, 348 (Pa. Super. 2015) (citation and internal citation omitted). To reach the merits of such a claim, this Court must determine:

> (1) whether the appeal is timely; (2) whether [the defendant] preserved [the] issue; (3) whether [the defendant's] brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

**Commonwealth v. Edwards**, 71 A.3d 323, 329-30 (Pa. Super. 2013) (citation omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013). "[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." **Cartrette**, **supra** at 1042.

Here, Gibbs failed to challenge the discretionary aspects of his sentence at sentencing or in a timely filed post-sentence motion. *See* Pa.R.Crim.P. 720 (A)(1). Therefore, any claims regarding the discretionary aspects of his sentence are waived on appeal, and counsel properly determined that this issue is frivolous.

Although Gibbs failed to set out issues separately for this Court's review in his *pro se* response to the **Anders** brief, we are able to glean several additional claims. First, Gibbs argues that Anthony Wells' statement to the police was the product of police suggestion. *See Anders* Brief Opposition, 5/12/2017, at 9. He contends both Wells and Handy subsequently retracted their statements to police that Gibbs shot at Handy during the October 24, 2012, incident. Gibbs concludes the witnesses' prior statements incriminating him were inadmissible as substantive evidence. *See id.* at 10.

This issue is waived. There is no indication in the record that Gibbs challenged the admissibility of either Wells' or Handy's statements to police. *See* Pa.R.A.P. 302(a); *Commonwealth v. Thoeun Tha*, 64 A.3d 704 (Pa. Super. 2013) (stating failure to raise contemporaneous objection to evidence at trial waives claim on appeal; even if defendant did provide contemporaneous objection, failure to cite to that objection renders claim unreviewable). Accordingly, we need not address this issue any further.

Second, Gibbs insists the trial court improperly admitted text messages from the cell phone of his uncle, Bruce Gibbs. *See Anders* Brief Opposition,

5/12/2017, at 10-12.  Gibbs contends his confrontation rights were violated because he could not cross-examine his uncle, who was deceased at the time of trial.  He further claims the trial court initially sustained an objection to the text messages, but subsequently abused its discretion when it decided to admit them in evidence.

At trial, during direct examination of Detective Verrecchio, the Commonwealth introduced a copy of the statement Gibbs' uncle gave to the detective.  In referring to the statement, the prosecutor asked, "And Mr. Bruce Gibbs who is now deceased at that time, did he give you his cell phone number?"  N.T., 12/3/2014, at 252.  Defense counsel objected on hearsay grounds, and the court sustained the objection.  When questioning of Detective Verrecchio resumed, the prosecutor asked, "Did you come into possession of [Bruce Gibbs'] cell phone?"  N.T., 12/4/2014, at 16.  The prosecutor then inquired about a forensic examination the detective performed on the cell phone, which revealed the phone's number.  *Id.* at 16-17.  Defense counsel raised no objection to this line of questioning, which did not elicit any text messages or other statements made by Gibbs' uncle, and the trial court did not alter its earlier evidentiary ruling.  Because Gibbs' argument relies on a mischaracterization of the record, we conclude it is frivolous.

Lastly, Gibbs contends the Commonwealth fabricated text messages associated with his own cell phone number and failed to turn over the text

messages and other cell phone data to the defense before trial. ***See Anders*** Brief Opposition, 5/12/2017, at 12-16. Gibbs again misconstrues the record. During a sidebar conference, defense counsel stated the Commonwealth appeared to have obtained the text messages through a forensic examination of Gibbs' cell phone, which was not authorized by the search warrant issued to the service provider, T-Mobile. The prosecutor, however, responded that defense counsel was looking at the wrong search warrant—a separate search warrant had authorized the forensic examination conducted by the police. Defense counsel then confirmed that this resolved the issue. ***See*** N.T., 12/4/2014, at 5-10. Counsel did not allege that the texts had been "manufactured" by the Commonwealth, and Gibbs provides no evidence for this allegation.

Additionally, Gibbs points to no part of the record where an objection was raised to the Commonwealth's alleged failure to disclose certain evidence prior to trial. Gibbs merely cites a comment made in passing by defense counsel during the sidebar discussion about how the Commonwealth obtained Gibbs' text messages:

> However, all this does in terms of the warrant is talk about getting certain cell information from T-mobile. And that information plus other cell tower information was provided to counsel during the course of the lead up to trial.
>
> Now, the text data was not provided to counsel. I know Ms. Donnelly sent me an e-mail on Friday November 20th that had attachments to it. But I believe I was having difficulty opening that data. And she resent the data the following Monday, which I was able to open and take a look at.

*Id.* at 7. Counsel did not raise an objection based upon the lack of pretrial disclosure and actually conceded that the Commonwealth ultimately turned over the evidence in question prior to trial. To the extent Gibbs complains about any other alleged violations of the rules regarding pretrial disclosure of evidence, those claims are waived. ***See*** Pa.R.A.P. 302(a); ***Thoeun Tha, supra***.

Accordingly, our review of the issues addressed in counsel's ***Anders*** brief, as well as the claims raised in Gibb's *pro se* response, reveals no non-frivolous claims for appeal. Therefore, we affirm the judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/18